UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

FRANCISCO FIGUEREDO-QUINTERO     :     DOCKET NO. 16-cv-85

VERSUS     :     JUDGE MINALDI

NATHAN CAIN II     :     MAGISTRATE JUDGE KAY

## REPORT AND RECOMMENDATION

Before the court is a *pro se* application for a writ of habeas corpus pursuant to 28 U.S.C § 2254, filed by Francisco Figueredo-Quintero ("petitioner"). Doc. 1; doc. 6.[1] The petitioner is a prisoner in the custody of the Louisiana Department of Public Safety and Corrections and is incarcerated at the Avoyelles Correctional Center in Cottonport, Louisiana. Nathan Cain II ("respondent"), warden, opposes the application. Doc. 11.

This matter is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons **IT IS RECOMMEDED** that the application be **DENIED** and that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] The grounds for the initial petition are provided at Doc. 1 and the accompanying memorandum. At Doc. 6, the petitioner responded to this court's amend order [doc. 3] directing him to provide evidence of his procedural history in the state courts but offered no additional briefing on his claims for relief.

# I.
## BACKGROUND

### *A. Conviction*

The petitioner was brought to trial in the 14th Judicial District, Calcasieu Parish, Louisiana, on May 4, 2010, on one count of forcible rape, one count of oral sexual battery, and one count of sexual battery.[2] Doc. 11, att. 3, p. 98. All charges related to a single victim, M.R., who was between the ages of thirteen and fourteen at the times of the offenses. *See infra* note 2.

The trial court found the petitioner guilty of the responsive verdict of sexual battery on the forcible rape charge, guilty of oral sexual battery, and not guilty of the charged count of sexual battery. Doc. 11, att. 2, p. 20. The petitioner then entered a plea of guilty to the cruelty to a juvenile charge, at which time the failure to register charge was dismissed by the prosecution. *Id.* at 22; *see infra* note 2.

The prosecution then filed a habitual offender bill. *Id.* at 24; *see* doc. 11, att. 4, p. 248. The petitioner appeared for sentencing on September 3, 2010, where he admitted to a prior conviction of attempted sexual battery and that he was therefore a second felony offender. Doc. 11, att. 5, pp. 11–12. He was sentenced to twenty years' imprisonment on each sexual offense, to run concurrently, and ten years on the cruelty to a juvenile conviction, to run consecutively to the other terms. Doc. 11, att. 2, pp. 24–25.

---

[2] The petitioner was indicted (Docket No. 18416-08) in the 14th Judicial District, Calcasieu Parish, Louisiana, on one count of forcible rape, one count of oral sexual battery, and one count of sexual battery. Doc. 11, att. 2, p. 36. All charges related to a single victim, M.R., who was between the ages of thirteen and fourteen at the time of the offenses. *Id.* The petitioner was also charged by bill of information (Docket No. 17544-08) with cruelty to a juvenile, again with M.R. as the victim, and failure to register as a sex offender. *Id.* at 37. Finally, the state charged the petitioner a third time via bill of indictment (Docket No. 16903-10) with one count each of forcible rape, oral sexual battery, sexual battery, and cruelty to a juvenile, with all charges again relating to a single victim, M.R. *Id.* at 38.

The petitioner filed a motion to quash, alleging that the charges were prejudicial and duplicitous. *Id.* at 32–34. At a hearing on this motion the prosecution announced its intent to dismiss the case under the first bill of indictment, Docket No. 18416-08, and arraign the petitioner on the second bill of indictment, Docket No. 16903-10. *Id.* at 148–49. The petitioner entered a plea of not guilty to those charges at the same hearing. *See id.* at 171–72. The state also indicated that it wished to sever the sexual offenses and try those first. *Id.* at 204–05.

### B. Direct Appeal

The petitioner appealed his convictions on the sexual offenses to the Louisiana Third Circuit Court of Appeal. *State v. F.F.Q.*, 73 So.3d 536 (La. Ct. App. 3d Cir. 2011). Specifically, he alleged that the evidence was insufficient to support the convictions and that the indictment was defective. *Id.* at 537–38. The Third Circuit reviewed the sufficiency of evidence assignments of error on the merits and denied relief. *Id.* at 539–40. It denied relief on the indictment assignment of error for petitioner's failure to brief it in violation of Rule 2–12.4 of the Louisiana Uniform Rules for the Courts of Appeal. *Id.* at 540–41.

The petitioner then sought review in the Louisiana Supreme Court, which review was denied on March 9, 2012. *State v. Figueredo-Quintero*, 84 So.3d 552 (La. 2012). He did not file a petition for writ of certiorari in the United States Supreme Court. Doc. 1, p. 3.

### C. State Collateral Review

The petitioner filed a *pro se* application for post-conviction relief with the trial court on or about August 27, 2013. Doc. 11, att. 15, pp. 159–85. There he raised the following claims:

1. The evidence was insufficient to support the convictions.

2. The trial court abused its discretion in denying the defense's motion for a directed verdict based on insufficient evidence.

3. The trial court erred in denying the defense's motion for a new trial based on newly discovered evidence.

4. The petitioner received ineffective assistance from his trial counsel based on the latter's failure to obtain pay stubs prior to trial.

*Id.* at 167–68. The trial court denied relief, finding that the first three claims should have been raised on appeal under Article 930.3 of the Louisiana Code of Criminal Procedure and that there was no merit to the ineffective assistance claim. *Id.* at 186. The petitioner sought review in the Third Circuit, which denied his writ application with the following statement:

> The Relator's claims alleging that there was insufficient evidence to convict him are repetitive, having been reviewed and denied on appeal. . . .  Further, the Relator's remaining claims to this court have no merit.  For these reasons, the Relator's writ application is denied.

*Id.* at 195. The petitioner then sought review in the Louisiana Supreme Court, which denied same on October 23, 2015. *Id.* at 197. In an accompanying per curiam opinion, it affirmed the Third Circuit's reasons for denying review of the insufficient evidence claim. *Id.* at 198. It then noted:

> Further, relator fails to show that the district court erred by denying his motion for a new trial claim due to his failure to raise the claim on appeal. La. C. Cr. P. art. 930.4(C). Finally, relator fails to demonstrate that he received ineffective assistance of counsel under the standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

*Id.* The petitioner then filed a second *pro se* application for post-conviction relief in the trial court on November 3, 2015. *Id*. at 199–226. There he raised the following claims:

1. The petitioner was denied effective assistance of counsel during trial, on appeal, and during the initial post-conviction relief process.

2. The findings made by the district court conclusively prove a claim of actual/factual innocence.

3. The state withheld critical evidence of the victim's sexual history.

4. There is sufficient evidence to show a "gateway claim" and the default should be excused.

*Id.* at 213. The trial court denied the application as untimely and the record does not reflect that any review was sought. *Id.* at 227.

### D.  Federal Habeas Petition

The instant petition was filed in this court on December 29, 2015. Doc. 1, p. 15. Here the petitioner renews all claims raised in his second application for post-conviction relief. Doc. 1, att. 1, p. 7.

## II.
### LEGAL STANDARDS ON HABEAS REVIEW

*A. Timeliness*

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. 28 U.S.C. § 2244(d)(1)(A). The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. 28 U.S.C. § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is only tolled, however, while applications for state review are pending and not between resolution of state review and the filing of the federal habeas application. *See Carey v. Saffold*, 122 S.Ct. 2134, 2138 (2002). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

*B. Procedural Default and Exhaustion of State Court Remedies*

Before proceeding to the merits of the issues raised in the petition, this court considers the doctrines of procedural default and exhaustion of state court remedies. Exhaustion and procedural

default are both affirmative defenses that may be waived by the state if not raised in its responsive pleadings. *See, e.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any claims by respondent under these doctrines, in addition to conducting our own review.

### 1. *Exhaustion of State Court Remedies*

The federal habeas corpus statute and decades of federal jurisprudence require a petitioner seeking federal habeas corpus relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *E.g.*, *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). Exhaustion is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, supported by the legal theories and factual allegations that he raises now. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).

### 2. *Procedural Default*

When a petitioner has defaulted a claim by violating a state procedural rule which constitutes adequate and independent grounds to bar direct review in the United States Supreme Court, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or actual innocence. *Coleman v. Thompson*, 111 S.Ct. 2546, 2554 (1991). Failure to satisfy state procedural requirements results in forfeiture of a petitioner's right to present a claim in a federal habeas proceeding. *Murray v. Carrier*, 106 S.Ct. 2639 (1986). This is not a jurisdictional matter; rather, it is grounded in concerns of comity and federalism. *Trest v. Cain*, 118 S.Ct. 478, 480 (1997).

Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default)[3] or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). The grounds for procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989).

### C. *General Principles*

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *Corwin v. Johnson*, 150 F.3d 456,

---

[3] To serve as adequate grounds for a federally cognizable default the state rule "must have been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted).

471 (5th Cir. 1998). Section 2254(d) provides that a writ of habeas corpus shall not be granted unless the state court's adjudication on the merits resulted in a decision that was either (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. A petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling federal standard. *Early v. Packer*, 123 S.Ct. 362, 365 (2002) (per curiam). Furthermore, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). A decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedents and arrives at a [contrary] result . . . ." *Bell v. Cone*, 125 S.Ct. 847, 850 (2005), quoting *Williams v. Taylor*, 120 S.Ct. 1495, 1519–20 (2000) (internal quotations omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination but rather he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 127 S.Ct. 1933, 1939 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a

different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Rather, the petitioner has to show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable. *Rice v. Collins*, 126 S.Ct. 969, 975 (2006).

## III.
### LEGAL ANALYSIS

As a preliminary matter this court reviews the petitioner's application for timeliness, failure to exhaust state court remedies, and procedural default. If the claim is procedurally viable, its merits are considered under the general standards set forth in Section II.C.

*A. Timeliness*

As the respondent maintains, the record establishes that the first application for post-conviction relief was filed with the trial court on August 27, 2013, rendering the instant petition time-barred.[4] The petitioner alleges that he filed his application for post-conviction relief on January 8, 2013, but that, through no fault of his own, the application was not received and he had to resubmit the petition on August 27, 2013. Accordingly, he may be entitled to equitable tolling of the limitation period, which would render the instant petition timely.[5]

The petitioner contends that this application was originally mailed on January 8, 2013. Doc. 1, att. 1, p. 2. In a letter to the Fourteenth Judicial District, dated August 27, 2013, and styled as a "Motion for Leave to File Post Conviction Relief," he stated that he had mailed the petition

---

[4] The petitioner's conviction became final on June 8, 2012, when his time for seeking review in the United States Supreme Court expired. *See* Sup. Ct. R. 13. Accordingly, **445 days** accrued against his one year limit before the state application for post-conviction relief was filed on August 27, 2013. The limitation period was tolled by this application and began to run again with the Louisiana Supreme Court's denial of this application on October 23, 2015. Because the petitioner's second application for post-conviction relief was untimely, it was not properly filed and he is therefore not entitled to tolling for that period. *Pace v. DiGuglielmo*, 125 S.Ct. 1807, 1811–14 (2005). Thus an additional **67 days** accrued before the instant application was filed on December 29, 2015, meaning that **512 days** have accrued against the one year limit and, as the respondent notes, the instant application is untimely.

[5] If the time limit was tolled between January 8 and August 27, 2013, then only **214 days** accrued before the application for post-conviction relief was filed. With the additional **67 days** counted between the Louisiana Supreme Court's ruling on that application and the filing of the instant petition, the instant petition would be timely.

on January 9, 2013, but that a family member subsequently contacted the clerk's office and learned that it had not been received. Doc. 11, att. 15, pp. 153–55. As proof he offered a copy of an Offender Funds Withdrawal Request, showing that he had withdrawn $2.30 for the purpose of mailing a document described as his application for post-conviction relief on January 8, 2013. *Id.* at 157. A stamp on that form also states that something, presumably the application for post-conviction relief, was "SENT OUT Jan 09 2013 BY MAILROOM." *Id.*

The petitioner also attached a copy of the application for post-conviction relief to this letter, styling it as Exhibit B and alleging that it had been "notarized on 1-8-13 [and sent] in 1-9-13." *Id.* at 154, 158. Respondent notes that the petitioner's own signature on this exhibit is dated August 27, 2013. *See id.* at 164. Accordingly, respondent contends that the documentation does not support the application for post-conviction relief filed on August 27, 2013, was first submitted to prison authorities for mailing on January 8, 2013.

The Supreme Court holds that a state habeas petitioner is entitled to equitable tolling of § 2244(d)'s limit upon a showing that "(1) he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 130 S.Ct. 2549, 2562 (2010) (internal quotations omitted). It is the petitioner's burden to establish that equitable tolling is warranted. *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir.), *modified on reh'g*, 223 F.3d 797 (5th Cir. 2000). Equitable tolling is permitted only "in rare and exceptional circumstances." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998). It applies "principally when the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Larry v. Dretke*, 361 F.3d 890, 897 (5th Cir. 2004) (quoting *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999)).

While the petitioner provides explanation for the mismatch in dates in the exhibit, the January 2013 mailing slip is adequate proof that he attempted to submit his first application for post-conviction relief in time. We note that the application attached was specifically described as a copy and surmise that petitioner simply failed to sign until he attached it as an exhibit. His resubmission in August 2013 supports his contention that he followed up with the trial court when no ruling was received.

Therefore whatever intervening event prevented the trial court from receiving or filing the application sent in January 2013 is an extraordinary circumstance, meriting equitable tolling until the application was actually submitted on August 27, 2013, due to the petitioner's evident pursuit of his rights. Accordingly, as explained *supra* note 5, the instant petition is timely.

B. *Exhaustion and Procedural Default*

The respondent contends that all claims in the instant petition are unexhausted due to the petitioner's failure to seek review in the Louisiana Supreme Court. Therefore he alleges that the claims are now subject to technical procedural default as they would be considered untimely under the Louisiana Code of Criminal Procedure. We agree, noting that the claims raised here were not presented in the properly exhausted direct appeal or first application for post-conviction relief.[6] As the respondent notes, any attempt to seek a supervisory writ from the second application for post-conviction relief or to file a third application for post-conviction relief would be time-barred under

---

[6] The petitioner did claim ineffective assistance by his trial counsel in the first application for post-conviction relief. Doc. 11, att. 15, pp. 167–68. However, the factual basis for this claim was greatly expanded in the second application for post-conviction relief (and renewal of that claim in the instant petition) to include additional allegations of deficient performance by trial counsel as well as ineffective assistance during direct appeal and the petitioner's first application for post-conviction relief. *Compare id.* at 180–83 (alleging only failure to obtain pay stub evidence as deficient performance) with *id.* at 214–16 and doc. 1, att. 1, pp. 8–10 (alleging ineffective assistance on direct appeal and post-conviction relief, and complaining of trial counsel's failure to obtain medical history, impeach the victim based on her alleged promiscuity, and to obtain an expert on the issue of past sexual conduct). *See Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003) ("We have consistently held that a petitioner fails to exhaust state remedies when he presents *material* additional evidentiary support to the federal court that was not presented to the state court.") (internal quotations and citations omitted).

Louisiana law. *See* LA. C. CR. P. arts. 912.1 and 930.8; *see* LA. CT. APP. UNIFORM RULES, Rule 4–3.

The petitioner does not refute this statement. Instead, he argues that any procedural defaults should be excused by his claim of actual innocence. Doc. 12, pp. 9–11.

The Supreme Court holds that "actual innocence, if proved, serves as a gateway through which a petitioner may pass [on federal habeas review] whether the impediment is a procedural bar . . . or . . . the expiration of the statute of limitations." *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013). Actual innocence refers to "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 118 S.Ct. 1604, 1611 (1998). As such, "tenable actual innocence gateways are rare" and a petitioner must meet the standard set out in *Schlup v. Delo*, 115 S.Ct. 851 (1995). *McQuiggin*, 133 S.Ct. at 1928. Claims of actual innocence require the petitioner "to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup*, 115 S.Ct. at 865.

The Fifth Circuit holds that (1) the petitioner "bears the burden of establishing that it is more likely than not" that the *Schlup* standard has been met, (2) there is no presumption of innocence in a habeas proceeding, and that the petitioner actually comes before the court on habeas review "with a strong—and in the vast majority of cases conclusive—presumption of guilt;" and that (3) *Schlup* "does not merely require a showing that reasonable doubt exists" but instead that in light of newly presented evidence, no reasonable juror would have found the defendant guilty. *Bosley v. Cain*, 409 F.3d 657, 664 (5th Cir. 2005). In assessing the petitioner's showing, the court is not bound by admissibility rules that would govern at trial but it is permitted to consider the

unreliability of the petitioner's proffered evidence. *Moore v. Quarterman*, 534 F.3d 454, 465 n. 18 (5th Cir. 2008) (citing *Schlup*, 115 S.Ct. at 867).

The petitioner first points to the trial court's comments accompanying the verdict, which included criticism of the prosecution for its late release of some evidence and decision not to test other evidence. *See* doc. 11, att. 4, pp. 222–26. The court then noted:

> And I understand the concerns that [defense attorney] had about these people not telling the truth and about [M.R.'s] stories in many cases being all over the place. And I looked for – I looked at all those inconsistencies and I looked for what was consistent and made sense to me, and what made sense to me was Dr. Bergstedt's testimony that her hymen had been ruptured, which was evidence of sexual intercourse . . . . And I gave the defendant wide latitude in asking about other instances of sexual intercourse, over the objection of the State. And I heard no one come in and say that they had sexual intercourse with this girl. The only person she ever identified as having sexual intercourse with her was the defendant, Francisco Figueredo. . . . I believe [M.R.] when she tells me she had intercourse with Mr. Figueredo. She's too young to be doing that. And the defendant should have known better.

*Id.* at 226–27.

The petitioner then makes two claims of newly discovered evidence: (1) information in the prosecution's file which he alleges shows that the victim was sexually active with other men and (2) timesheets alleged to show that the petitioner was at work at times when the victim claimed he was having intercourse with her.

On the first claim, the petitioner produces no newly discovered evidence related to the victim's sexual history. We have also searched the record as it relates to his attempt to raise this claim in his second application for post-conviction relief, and find there only the same general allegations of evidence in the prosecution's file with no indication of what this evidence was or when it was revealed to the petitioner. *See* doc. 11, att. 15, pp. 199–226. Accordingly, the petitioner has not satisfied his burden under *Schlup* for this claim as he provides no new evidence.

On the second claim, the petitioner contends that the new evidence relating to his timesheets was discovered by his trial attorney at some point after the conclusion of the trial but before sentencing.

At trial the victim testified that she was vaginally raped by the petitioner around twenty times, with the first incident occurring on Thanksgiving week of 2007. Doc. 11, att. 3, pp. 117–20. She did not identify a specific time or date during Thanksgiving week when the first incident occurred, other than to note that her grandmother, the petitioner's wife, was at work during that time. *Id.* However, a forensic interviewer testified and noted that the victim had stated at a Children's Advocacy Center interview that the rape occurred on Monday or Tuesday of Thanksgiving week. Doc. 11, att. 4, pp. 40–42. The victim's grandmother, a custodian at a local middle school, testified generally that her work hours were from 7:00 to 3:30. *Id.* at 79. She also stated that she had worked Monday and Tuesday of Thanksgiving week in 2007. *Id.* at 93.

At sentencing on September 3, 2010, the defense attorney referenced his motion for a new trial. Doc. 11, att. 4, pp. 249–50. He stated:

> As the Court recalls, the alleged victim, M.R., claimed that my client had sexual intercourse with her during the Thanksgiving week of 2007, and . . . subsequent to the trial – his wife was able to obtain his employment records from Resin Systems, which is a company that I believe contracts employees to work at the plant. In our client's case, he was actually working at PPG. And we were able to locate those pay stubs from the dates of Monday, November 19th, 2007, which was Thanksgiving week of '07, when M.R. claimed that my client was not at work, that he was at home having forced sex upon her. The record will reveal that Monday, November 19th, my client worked 6.25 hours that particular day. She also claimed that it happened on Tuesday, November 20th, that he was raping her at home while [her grandmother] was at school – at work, she worked at the middle school, and the employment records reveal, Judge, that on Tuesday the 20th my client worked ten (10) hours that particular day. And lastly she also claimed that it happened on Wednesday the 21st, which was the day before Thanksgiving, and we obtained the records, Judge, to show that on that particular day, Wednesday, November 21st, my client worked eight (8) hours that particular day.

*Id.*; *see* doc. 11, att. 2, pp. 100–03 (pay stubs attached to motion for new trial). The trial court noted that it had denied the motion without setting it for hearing. Doc. 11, att. 4, pp. 250–51. It then explained that the denial was based on the fact that the defense had not sought a continuance and the trial court's belief that the evidence could have been discovered prior to trial.[7] *Id.* at 251; doc. 11, att. 5, p. 8.

The pay stubs and time sheets do not meet the bar set by *Schlup*. They only show that the petitioner worked some hours in the date range when the victim recalled in an earlier interview that the first instance of vaginal sexual intercourse occurred. However, there is no proof of the times when the petitioner's shifts occurred and no evidence, apart from testimony about her general work schedule, to show when the victim's grandmother would have been at work on those dates. Therefore the pay stubs do not disprove that the petitioner could have been alone with the victim at some point in that date range and do not amount to a showing of actual innocence under *Schlup*.

Furthermore, this newly discovered evidence was known to the petitioner at least by the September 3, 2010 hearing at which he was present. Doc. 11, att. 4, p. 247. Accordingly, it would not suffice to excuse his failure to raise this claim in his first application for post-conviction relief and avoid the procedural default imposed.

The petitioner shows no basis for excusing the technical procedural default over the claims raised in his petition. Therefore he may not proceed on the merits before this court.

## IV.
### CONCLUSION

For the reasons stated above, the undersigned concludes that the petitioner is not entitled to federal habeas relief.

---

[7] The petitioner alleges that the defense did seek a continuance, but provides no support for this assertion. Doc. 12, p. 3. We can find no record of such a request.

Accordingly, **IT IS RECOMMENDED** that the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE this 24th day of October, 2016.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE